**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JESSICA RIVERA** : | |
| **4103 Heathfield Road** | |
| **Rockville, MD 20853** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | |
| : | |
| **FARMERS INSURANCE, d/b/a** : | |
| **TRUCK INSURANCE EXCHANGE,** | |
| **d/b/a FARMERS GENERAL** : | |
| **INSURANCE AGENCY, INC.** | **Case No. _____** |
| **700 Quaker Lane** : | |
| **FMR, Area 4C** | |
| **Warwick, RI 02886** : | |
| : | |
| Serve:   Corporation Service Co. : | |
| 1090 Vermont Ave., NW, #430 | |
| Washington, DC 20005 : | |
| : | |
| and : | |
| : | |
| **JOHN DOE** : | |
| **Address Unknown** | |
| : | |
| **Defendants.** | |

**COMPLAINT FOR DAMAGES**
(Uber Driver Uninsured Motorist Claim)

**JURISDICTION AND VENUE**

1. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy which exceeds $75,000.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 as the cause of action arose in the District of Columbia.

## PARTIES

3. Plaintiff, Jessica Rivera, is an adult resident of the State of Maryland.

4. Upon information and belief, Defendant Farmers Insurance, d/b/a Truck Insurance Exchange, d/b/a Farmers General Insurance Agency, Inc. (together, "Farmers") is a Rhode Island Corporation with its principal place of business in Rhode Island.

5. Upon further information and belief, Defendant Farmers is authorized to conduct business, and conducts business, in the District of Columbia and Maryland, and provided automobile insurance—including uninsured motorist coverage—to Uber drivers in the District of Columbia and Maryland (including Plaintiff) for policy periods encompassing May 22, 2021.

6. Defendant John Doe (whose identify is currently unknown to Plaintiff) is the driver of the vehicle that caused the hit-and-run collision described below.

## FACTS: Collision

7. As of May 22, 2021, Jessica Rivera lived in Rockville, MD.

8. As of May 22, 2021, Ms. Rivera owned a Cadillac Escalade and parked it at her Rockville residence on a nightly basis.

9. On the night of Friday, May 21, into the early morning hours of Saturday, May 22, 2021, Ms. Rivera was working as an Uber driver in the District of Columbia.

10. Just after 2:00 a.m., Ms. Rivera had picked up an Uber fare in the District and was driving eastbound in the 700 block of Florida Avenue in the right-hand lane.

11. Suddenly, and without warning, a vehicle in lane to the left of hers, driven by Defendant Doe, veered into her lane, slamming into the driver's side of her vehicle.

12. After the impact, Defendant Doe sped away from the scene; at present, his identity remains unknown.

13. Multiple uninvolved eyewitnesses confirmed the foregoing facts to the responding police officers.

14. As a result of the collision, Ms. Rivera suffered numerous severe and permanent injuries (including without limitation a tendon rupture in her dominant hand that even after surgery has left her with chronic nerve pain, as well as back and neck injuries that required a cervical fusion), has incurred and continues to incur substantial medical expenses, has incurred and continues to incur lost wages, and has suffered and continues to suffer extreme physical and emotional pain, suffering, and anguish, as well as other damages.

**FACTS: Ms. Rivera's Employment History with Uber;
Uber's Uninsured Motorist Insurance Coverage**

15. Ms. Rivera first began working as an Uber driver in 2015.

16. Uber obtains (as it is obligated to do) auto insurance to cover the millions of drivers such as Ms. Rivera that Uber puts on the road each day.

17. In the District of Columbia and Maryland, the jurisdictions relevant to the instant action, auto insurance policies contain both liability coverage and uninsured motorist coverage.

18. Liability coverage affords protection to members of the public (other drivers, cyclists, pedestrians, etc.) who are injured in crashes caused by Uber drivers.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 3 -

19. Uninsured motorist coverage, on the other hand, affords protection to Uber drivers and their passengers who are injured in collisions caused not by Uber drivers, but instead by (a) other drivers with no or low auto liability insurance or (b) other drivers who flee the scene and are not identified. It provides critical protection to both the drivers who are the engine of Uber's moneymaking machine <u>and</u> the members of the public who ride in Ubers every day.

20. Under the laws of both the District of Columbia and Maryland, an insured must take specific, intentional actions in order to obtain uninsured motorist coverage that is less than the liability coverage in an auto insurance policy.

21. Notably, in the absence of <u>liability</u> coverage, Uber drivers and—more importantly—Uber itself would be financially responsible for the injuries, harms, and losses suffered by the victims; on the other hand, in the absence of <u>uninsured motorist</u> coverage, Uber would face no such financial responsibility.

22. Upon information and belief, when Ms. Rivera first began working for Uber, Uber provided its drivers and passengers with $1,000,000 of uninsured motorist coverage under a Maryland auto insurance policy.

23. Upon information and belief, when Ms. Rivera first began working for Uber, Uber provided its drivers and passengers with $1,000,000 of uninsured motorist coverage under a District of Columbia auto insurance policy.

24. Uber's District of Columbia auto insurance policy in effect at the time of the collision provides uninsured motorist coverage for (a) all Uber vehicles garaged in the

District and (b) all Uber rides that originate in the District (regardless of where the Uber vehicle is garaged).

25.   Upon information and belief, Uber's Maryland auto insurance policy in effect at the time of the collision includes parallel terms, promising uninsured motorist coverage for (a) all Uber vehicles garaged in Maryland and (b) all Uber rides that originate in Maryland (regardless of where the Uber vehicle is garaged).

26.   Because at the time of the collision Ms. Rivera was driving a vehicle garaged in Maryland for an Uber ride that originated in the District of Columbia, both Uber's District of Columbia and Maryland uninsured motorist provisions in effect at the time of the collision provide coverage for the injuries Ms. Rivera suffered.

27.   After Ms. Rivera sought uninsured motorist coverage in the wake of the collision described above, Defendant Farmers represented that at some point prior to the collision, Uber chose to reduce its District of Columbia uninsured motorist coverage from $1,000,000 to $25,000, while maintaining liability coverage in the amount of $1,000,000.

28.   Uber never advised its drivers of the drastic reduction of protection referenced in paragraph 27.

29.   Defendant Farmers never advised Uber drivers of the drastic reduction of protection referenced in paragraph 27.

30.   Uber never advised District of Columbia consumers—the members of the public being put at risk as Uber passengers—of the drastic reduction of protection referenced in paragraph 27.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

31. Defendant Farmers never advised District of Columbia consumers—the members of the public being put at risk as Uber passengers—of the drastic reduction of protection referenced in paragraph 27.

32. Defendant Farmers permitted Ms. Rivera to view select pages of the applicable District of Columbia auto insurance policy; however, despite the fact that she is an insured, it refused to permit her to review the full policy without signing a non-disclosure agreement unilaterally drafted by Uber.

33. After Ms. Rivera sought uninsured motorist coverage in the wake of the collision described above, Defendant Farmers represented that at some point prior to the collision, Uber chose to reduce its Maryland uninsured motorist coverage from $1,000,000 to $30,000, while maintaining liability coverage in the amount of $1,000,000.

34. Uber never advised its drivers of the alleged drastic reduction of protection referenced in paragraph 33.

35. Defendant Farmers never advised Uber drivers of the alleged drastic reduction of protection referenced in paragraph 33.

36. Uber never advised District of Columbia consumers—the members of the public being put at risk as Uber passengers—of the alleged drastic reduction of protection referenced in paragraph 33.

37. Defendant Farmers never advised District of Columbia consumers—the members of the public being put at risk as Uber passengers—of the alleged drastic reduction of protection referenced in paragraph 33.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 6 -

38. Although it has made the representations set forth in paragraph 33, Defendant Farmers denied coverage under the Maryland auto insurance policy and has steadfastly refused to permit Ms. Rivera to view the policy under any circumstances.

39. Both the District of Columbia and Maryland uninsured motorist coverage reductions (the latter as represented by Defendant Farmers) have the same practical result:

   a. For crashes in which its drivers were <u>at fault</u>, for which Uber would itself bear financial responsibility in the absence of sufficient insurance, Uber continued to protect itself with $1,000,000 of liability coverage; but

   b. For crashes in which its drivers and passengers are not at fault but are merely <u>victims</u>, Uber drastically reduced its coverage, reducing the cost of its insurance premiums at no risk to itself, but at <u>massive</u> risk to both its workforce and the members of the public who ride in its vehicles.

## **COUNT I**
**(Automobile Collision—Negligence: Defendant Doe)**

40. Plaintiff incorporates by reference the foregoing paragraphs and further alleges that at all times relevant, Defendant Doe owed Plaintiff a duty to operate his vehicle in a safe, prudent, and appropriate manner consistent with motor vehicle safety and traffic laws then and there in existence.

41. Plaintiff further alleges that Defendant Doe breached this duty of care owed to Plaintiff in the operation of the motor vehicle and was negligent in some or all of the following ways:

   a. by failing to maintain a proper lookout;

   b. by failing to maintain proper control of the motor vehicle;

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

   c. by failing to pay full time and attention to the operation of the motor vehicle;

   d. by failing to safely drive within his lane;

   e. by attempting to change lanes without first ascertaining that she could do so safely; and

   f. by otherwise failing to operate the motor vehicle with the degree of skill and care required under the circumstances.

42. As a direct and proximate cause of Defendant Doe's negligence, Plaintiff suffered the injuries and damages set forth above.

## COUNT II
### (Breach of Contract to Provide Uninsured Motorist Insurance: Defendant Farmers)

43. Plaintiff incorporates by reference the foregoing paragraphs and further alleges that Defendant Farmers, pursuant to the applicable insurance policy/policies in effect at the time of the accident, is legally and contractually obligated to provide Plaintiff uninsured motorist automobile insurance coverage for the injuries and damages she sustained in the collision described above.

44. Upon information and belief, as described in paragraphs 24-26, Defendant Farmers owes uninsured motorist coverage under at least two distinct policies, one written pursuant to the laws of the State of Maryland and the other written pursuant to the laws of the District of Columbia.

45. Under the uninsured motorist provisions of the District of Columbia policy, Defendant Farmers owes Plaintiff $25,000 in coverage.

46. Under the uninsured motorist provisions of the Maryland policy, Defendant Farmers owes Plaintiff additional coverage up to the full policy limits.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 8 -

47. Despite having been provided with sufficient information to adjust the claims and make payment, Defendant Farmers has refused to provide the contracted-for coverage to Plaintiff, nor even to permit Plaintiff to review the policies in question.

48. By refusing to provide the contracted-for coverage (nor even permit Plaintiff to review the policies in question), Defendant Farmers has in bad faith breached its contractual duties to Plaintiff.

WHEREFORE Plaintiff, Jessica Rivera, demands judgment against Defendants John Doe and Farmers Insurance, d/b/a Truck Insurance Exchange, d/b/a Farmers General Insurance Agency, Inc., jointly and severally, in the form of compensatory damages in the full and just amount of One Million Five Hundred Thousand Dollars ($1,500,000), plus interest and costs.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all of the above claims.

Respectfully submitted,

REGAN ZAMBRI LONG PLLC

By:  **/s/ *Christopher J. Regan***
Christopher J. Regan    #1018148
cregan@reganfirm.com
Emily C. Lagan    #1645159
elagan@reganfirm.com
1919 M Street, NW, Suite 350
Washington, DC  20036
PH:  (202) 463-3030
FX:  (202) 463-0667
*Counsel for Plaintiff*